Matter of HOP N.Y. Entertainment, LLC (Commissioner of Labor) (2021 NY Slip Op 03093)





Matter of HOP N.Y. Entertainment, LLC (Commissioner of Labor)


2021 NY Slip Op 03093


Decided on May 13, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:May 13, 2021

530931
[*1]In the Matter of HOP New York Entertainment, LLC, Doing Business as Technicolor Post Works New York, Appellant. Commissioner of Labor, Respondent.

Calendar Date:April 21, 2021

Before:Lynch, J.P., Clark, Aarons, Pritzker and Reynolds Fitzgerald, JJ.

Akerman LLP, New York City (Paul J. Rutigliano of counsel), for appellant.
Letitia James, Attorney General, New York City (Steven Koton of counsel), for respondent.



Clark, J.
Appeal from a decision of the Unemployment Insurance Appeal Board, filed July 17, 2019, which ruled that the unemployment insurance experience account of Playground Screening Room Inc. was transferred to HOP New York Entertainment, LLC.
HOP New York Entertainment, LLC is engaged in the business of providing post-production services, including color correction, film editing and sound mixing, to clients in the television and film industry. In addition to providing these services, HOP operates a screening room at its primary headquarters on Leroy Street in Manhattan, which it makes available to clients for viewing films and movies prior to their release. In March 2013, HOP entered into an agreement to purchase the assets of Playground Screening Room, Inc., doing Business as The Broadway Screening Room (hereinafter Playground), a competing company that operated a screening room at 1619 Broadway in Manhattan. The assets, listed on schedule 2.1 of the agreement, included various pieces of electronic equipment and hardware, as well as The Broadway Screening Room name, the online screening schedule booking website and the domain name.
In July 2013, Playground filed a quarterly combined withholding, wage reporting and unemployment insurance return with the Department of Labor indicating that it had sold part of its business to HOP. This prompted an investigation that culminated in the Department's issuance of an initial determination finding that there had been a partial transfer of business from Playground to HOP and that, pursuant to Labor Law § 581 (4), the unemployment insurance experience account of Playground should be transferred to HOP. This resulted in an increase in HOP's unemployment insurance tax rate and a finding that HOP's unemployment insurance tax experience account balance was underpaid by $125,085.45. HOP contested the determination. Following a hearing, an Administrative Law Judge (hereinafter ALJ) found that HOP was not a partial transferee of Playground's business and therefore was not liable for additional contributions based on Playground's unemployment insurance experience account. Consequently, the ALJ overruled the initial determination. The Unemployment Insurance Appeal Board subsequently reversed the ALJ's decision and ruled that a transfer had, in fact, occurred under Labor Law § 581 (4). HOP appeals.
"Labor Law § 581 establishes an experience-rating system that allows for variations in the unemployment insurance contribution rates from the standard rate of qualified employers in certain situations" (Matter of Putrelo Bldg. Enters., Inc. [Commissioner of Labor], 184 AD3d 938, 938 [2020] [citation omitted]; see Matter of Hancock Lbr. LLC [Commissioner of Labor], 56 AD3d 844, 845 [2008]). The statute provides that where a business has been transferred from one employer to another, either in whole or in part, the transferee shall take over and continue the unemployment insurance experience account of the transferor[*2](see Labor Law § 581 [4] [a]; Matter of Putrelo Bldg. Enters., Inc. [Commissioner of Labor], 184 AD3d at 938-939). A transfer, however, will not be deemed to have occurred "if the transferee has not assumed any of the transferring employer's obligations, has not acquired any of the transferring employer's good[]will, has not continued or resumed the business of the transferring employer either in the same establishment or elsewhere, and has not employed substantially the same employees as those of the transferring employer" (Matter of Putrelo Bldg. Enters., Inc. [Commissioner of Labor], 184 AD3d at 939; see Labor Law § 581 [4] [c] [1]-[4]). To negate a transfer, all four of these requirements must be met (see Matter of Putrelo Bldg. Enters., Inc. [Commissioner of Labor], 184 AD3d at 939; Matter of Chronetics, Inc. [Levine], 46 AD2d 926, 927 [1974]; Matter of Great Cent. Distrib. Co. [Catherwood], 33 AD2d 839, 840 [1969]).
Here, undisputed evidence was presented that, in connection with its purchase of assets from Playground, HOP did not assume any of Playground's obligations, did not continue or resume operation of Playground's screening room at 1619 Broadway and did not retain any of Playground's employees. The sole basis upon which the Board concluded that a transfer had occurred was HOP's alleged acquisition of Playground's goodwill. The record, however, does not support the Board's finding in this regard.
The asset purchase agreement did not identify goodwill as an asset encompassed by the agreement, nor was it specifically mentioned on the list of property set forth on schedule 2.1 of the agreement. Although goodwill was generally referenced in the allocation statement that itemized components of the purchase price, this statement was one of many closing documents and was required by provisions of the Internal Revenue Code and pertinent regulations. The reference was apparently intended to refer to nontangible assets included in the sale, such as The Broadway Screening Room name, the online screening schedule booking website and the domain name.[FN1] Assuming that such assets could be considered part of Playground's goodwill, it is significant that they were never utilized by HOP, as HOP entered into the asset purchase agreement for the sole purpose of curtailing Playground's operation of the screening room at 1619 Broadway and putting it out of business. Given that all four of the requirements negating a transfer under Labor Law § 481 (4) are present here, substantial evidence does not support the Board's finding that a partial transfer of business occurred, so as to support the conclusion that HOP assumed the unemployment insurance experience account of Playground and is liable for additional contributions necessary to remedy the underpayment (compare Matter of Felix Assoc., Inc. [Commissioner of Labor], 53 AD3d 893, 894 [2008]; Matter of Up State Fed. Credit Union [Sweeney], 246 AD2d 704, 705 [1998]). Accordingly, the Board's decision [*3]must be reversed.
Lynch, J.P., Aarons, Pritzker and Reynolds Fitzgerald, JJ., concur.
ORDERED that the decision is reversed, without costs, and matter remitted to the Unemployment Insurance Appeal Board for further proceedings not inconsistent with this Court's decision.



Footnotes

Footnote 1: Such assets do not neatly fall under the category of goodwill as goodwill is "an intangible asset which may be transferred from the seller to the purchaser [and] has been defined as the right of the purchaser 'to expect that the firm's established customers will continue to patronize the business'" (CSI Group, LLP v Harper, 153 AD3d 1314, 1316 [2017], lv dismissed 31 NY3d 1061 [2018], quoting Mohawk Maintenance Co. v Kessler, 52 NY2d 276, 285 [1981]).